UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**POLINA MILMAN**, *an individual,*

    Plaintiff,

v.	Case No:	20-cv-

**FIEGER & FIEGER, P.C., D/B/A FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**, *a Michigan corporation*; *and*, **GEOFFREY FIEGER**, *an individual, sued in his individual and official capacity,*

    Defendants.

---

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Polina Milman, by her attorneys Deborah Gordon Law, complains against Defendants as follows:

1

## **JURISDICTION & VENUE**

1. This is an action by Polina Milman against Fieger & Fieger, P.C., d/b/a Fieger, Fieger, Kenney & Harrington, P.C. and Geoffrey Fieger for violating the Family and Medical Leave Act and termination in violation of Michigan Public Policy.

2. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3. Plaintiff Polina Milman ("Plaintiff") is a resident of Michigan and resides in the Eastern District of Michigan.

4. Defendant Fieger & Fieger, P.C., d/b/a Fieger, Fieger, Kenney & Harrington, P.C. ("Fieger & Fieger") is a professional corporation incorporated under the laws of the State of Michigan with its principal place of business in the Eastern District of Michigan.

5. Defendant Geoffrey Fieger ("Fieger") is a resident of Michigan and resides in the Eastern District of Michigan.

6. The events giving rise to this matter occurred in the Eastern District of Michigan. Further, both Defendants reside in the Eastern District of Michigan. As a result, venue lies in the Eastern District of Michigan under 28 U.S.C. § 1391.

7. Plaintiff was admitted to practice law in the State of Michigan in December 2014.

## STATEMENT OF FACTS

### PARTIES

8. Plaintiff was admitted to practice law in the State of Michigan in December 2014.

9. Plaintiff is the mother of a two-year-old son and a five-year-old daughter.

10. From late 2015 through mid-2016, Plaintiff worked as a document reviewer in a temporary position at a multi-national professional services corporation.

11. From 2016 to 2018, Plaintiff worked at Oakland County Circuit Court as a paralegal.

12. In May 2018, Plaintiff was hired as an attorney at Fieger & Fieger.

13. Fieger & Fieger is a law firm in Southfield, Michigan with roughly 70 employees.

14. Plaintiff's offer of employment included two weeks of paid vacation time, three personal days ("PTO"), and two sick days per year.

15. Fieger is owner of Fieger & Fieger.

### PLAINTIFF'S TERMINATION

16. COVID-19 is an infectious disease which was first detected in Wuhan, Hubei Province, China in late 2019.

17. COVID-19 is highly contagious and associated with severe attacks on the infected person's respiratory system.

18. COVID-19 is responsible for unprecedented global shutdowns throughout 2020 and over 688,000 deaths worldwide as of August 1, 2020.

19. On Tuesday, March 10, 2020, the Michigan Department of Health and Human Services detected the first two confirmed cases of COVID-19 in Michigan.

20. The same day, Governor Gretchen Whitmer declared a state of emergency across the state of Michigan.

21. By Thursday, March 12, 2020, the confirmed cases of COVID-19 in Michigan had grown to ten.

22. That evening, Governor Whitmer announced that all K-12 schools would be closed starting Monday, March 16, 2020 for a period of three weeks to combat the spread of COVID-19.

23. On Friday, March 13, 2020, President Trump declared COVID-19 a national emergency.

24. The same day, Plaintiff's children's daycare facility announced that it would close at end of day and would remain closed throughout the following week because of concerns about COVID-19.

25. At the suggestion of office management, Plaintiff thoroughly cleaned and disinfected her desk, which was in a busy walkway, before leaving the office that day.

26. At this point, Plaintiff had used five days of vacation time and taken two sick days in 2020.

27. Sometime in early March, Fieger & Fieger had pre-assigned certain teams of employees to work from home for one day in order to provide for a test-run of those employees' capability to work remotely on office equipment.

28. Plaintiff's team was preassigned to work from home on Wednesday, March 18, 2020.

29. On Saturday, March 14, 2020, Plaintiff emailed Fieger & Fieger partner James Harrington to inform him that her children's daycare facility had been closed because of COVID-19.

30. On Sunday, March 15, 2020, Plaintiff emailed Harrington again to express her concerns about the recent Center for Disease Control ("CDC") guidance noting that people with certain underlying respiratory conditions were considered "high risk" for contracting COVID-19.

31. Plaintiff explained that her young son had previously contracted Respiratory Syncytial Virus ("RSV"), a respiratory infection which can be dangerous and lead to severe illness if contracted by infants.

32. Plaintiff also explained that after contracting RSV, her son spent five days in the hospital and recently had another episode which required him to use a nebulizer.

33. Plaintiff worried that her son's previous bout with RSV left him particularly vulnerable to contracting COVID-19.

34. Plaintiff sought to work from home on both Monday, March 16 and Tuesday, March 17.

35. Harrington responded that he was not authorized to approve work from home and that Plaintiff should contact Fieger directly. Harrington advised Plaintiff that if work from home was denied, that personal time off ("PTO") could be applied.

36. On Monday, March 16, 2020, the Trump Administration issued national guidelines aimed at curtailing the spread of COVID-19 which recommended that all Americans avoid unnecessary travel and gathering in groups of more than 10 people.

37. The guidelines also advised that those who feel ill, older persons, and those with underlying health conditions should stay home and avoid contact with others.

38. The same day, Governor Whitmer issued a new executive order which banned gatherings of more than 50 people, limited restaurants to carry-out service only, and ordered entertainment and recreational venues to close.

39. Fieger & Fieger's office is home to roughly 70 employees.

40. Around 7:30 a.m. on March 16, 2020, Plaintiff called Fieger, who denied approval to work from home for the two days requested.

41. Based on the denial of the request to work remotely, and Harrington's suggestion, Plaintiff then requested PTO approval from human resources for Monday, March 16, 2020 and Tuesday, March 17, 2020.

42. Human resources approved both requests by end of day on Monday, March 16, 2020.

43. On Tuesday, March 17, 2020, Geoffrey Fieger sent a firmwide memo related to COVID-19.

44. The memo reinforced employees' responsibility to protect the health of others and instructed employees to contact the firm if anyone in their family contracted COVID-19.

45. Later that day, Plaintiff received a phone call from her direct supervisor, Marc Berlin, asking if Plaintiff planned to return to work on Thursday, March 19, 2020 following her pre-assigned work from home day on Wednesday, March 18, 2020.

46. Plaintiff explained the she planned to come into the office but that her children's daycare facility remained closed because of concerns about COVID-19.

47. She also explained that she had no other viable alternative childcare.

48. As the day progressed, Plaintiff's son developed an occasional cough, runny nose, and gastrointestinal issues.

49. Plaintiff emailed Fieger & Fieger's Office Controller and head of human resources, Wanda Lovelace, seeking to move to a more secluded workspace in the office upon her return.

50. Plaintiff's desk was in an open walkway. The location of the desk deviated from the CDC recommendation to maintain six feet of distance between people to prevent the spread of COVID-19.

51. On Wednesday, March 18, 2020, the Families First Coronavirus Response Act ("FFCRA") was enacted, creating two new emergency paid leave requirements in response to the COVID-19 pandemic: the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA").

52. Relevant to the current matter, the EPSLA requires employers to provide full-time employees who are caring for an individual who is experiencing COVID-19 symptoms or whose childcare has become unavailable due to COVID-19 up to two weeks of paid sick leave. 29 C.F.R. § 826.10 *et seq.*

53. The EPSLA also prohibits employers from discharging, disciplining, or in any other manner discriminating against an employee who takes paid sick leave

8

under the EPSLA or files any complaint under or relating to EPSLA. 29 C.F.R. § 826.150.

54. The EFMLEA requires employers to provide expanded paid family and medical leave to employees who are unable to work because the employee is caring for her child whose school or place of child care is unavailable due to a public health emergency declared by a Federal, state, or local agency. 29 C.F.R. § 826.10 *et seq.*

55. The Family and Medical Leave Act's ("FMLA") general prohibitions on interference with rights and discrimination, as well as the FMLA's enforcement provisions, apply for purpose of the EFMLEA. 29 C.F.R. § 826.151.

56. That Wednesday, March 18, 2020, Plaintiff's team was preassigned to work remotely.

57. Plaintiff's son's symptoms persisted throughout the day, with his gastrointestinal issues progressing to diarrhea.

58. Lovelace responded to Plaintiff's earlier email seeking to have her workspace moved by suggesting that Plaintiff work from a conference room on a laptop.

59. Later, Berlin emailed Plaintiff to confirm that she would be working from home on Wednesday, March 18, 2020 and returning to the office thereafter.

60. Plaintiff responded affirmatively.

61. Overnight, the number of confirmed cases of COVID-19 in Michigan jumped from 80 to 334.

62. On the morning of Thursday, March 19, 2020, Plaintiff emailed Lovelace stating that her son's symptoms were not any better and that she had major concerns about working in the office because of her son's condition.

63. Plaintiff offered to take unpaid leave, if necessary, to stay out of the office.

64. Lovelace emailed Plaintiff back to tell her that she could work from home for the rest of the week.

65. Plaintiff forwarded Lovelace's email to Berlin.

66. Berlin and Plaintiff emailed back and forth throughout the workday as Plaintiff worked from home.

67. Around 5p.m. on Thursday, March 19, 2020, Lovelace emailed Plaintiff a termination letter signed by Fieger:

**FIEGER, FIEGER, KENNEY & HARRINGTON**
A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELORS AT LAW
19390 WEST TEN MILE ROAD
SOUTHFIELD, MI 48075-2463
TELEPHONE (248) 355-5555
FAX (248) 355-5148
WEBSITE: WWW.FIEGERLAW.COM

March 20, 2020

Polina Milman
[redacted]

RE: Employment

Polina:

It appears that you cleaned out your office last Friday. You removed everything that belongs to you.

You failed to come in to work on Monday and Tuesday and indicated that you were taking personal time off.

You were assigned to work out of the office on Wednesday. You assured your supervisor, Marc Berlin, that you were going to come in on Thursday. Today, Thursday, you did not come into work and indicated that your child had a minor cold.

Previously, this year, you have taken 5 vacation days and two sick days. Thus, you have been off 10 days in less than 3 months this year.

Today will be your last day on our payroll. Good luck in your future endeavors.

Sincerely,

Geoffrey Fieger

68. The termination letter falsely suggested, in an accusatory tone, that Plaintiff had cleaned out her desk the previous Friday with the intent to permanently leave the firm and that she declined to come into work because her son had a "minor cold."

69. Plaintiff responded to Lovelace by asking if Fieger would reconsider. She emphasized that her intent in working from home stemmed from her concern for the health and safety of her son and from her concern about COVID-19.

70. Plaintiff received no response.

71. Around Monday, March 23, 2020, Plaintiff requested a copy of her personnel file.

72. On Monday, March 23, 2020, Governor Whitmer announced a statewide stay-at-home order which discontinued all non-essential business and travel and ultimately remained in effect through the end of May.

73. Later that day, Fieger sent a second signed termination letter, enclosed in Plaintiff's personnel file, reiterating Plaintiff's termination, and making additional false statements about the events which precipitated it.

74. The second letter falsely suggested that Plaintiff refused to work on Monday, March 16, 2020 and Tuesday, March 17, 2020, ignoring the fact that human resources approved Plaintiff's PTO.

75. Similarly, the letter falsely stated that Plaintiff refused to work on Thursday, March 19, 2020 because her "child had a cold."

76. The letter continued in its falsehoods with "[a]t that point, it was clear you had quit. You had made it clear by your activity that you had no intention of coming into work."

## COUNT I

### VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT-INTERFERENCE AND RETALIATION

77. Plaintiff repeats and realleges all foregoing paragraphs as if they were fully set forth herein.

78. Plaintiff is an eligible employee under the Family and Medical Leave Act ("FMLA"); 29 U.S.C. § 2601 *et seq.*; 29 U.S.C. § 2611.

79. Fieger & Fieger is an employer covered by the FMLA under 29 U.S.C. § 2601 *et seq.*; 29 U.S.C. § 2611.

80. Geoffrey Fieger acted as an agent of Fieger & Fieger and is thus also Plaintiff's employer under 29 U.S.C. § 2601 *et seq.*; 29 U.S.C. § 2611.

81. Plaintiff was entitled to a leave under the FMLA and was qualified to enjoy its protections as set forth above.

82. Plaintiff's conduct, as alleged in the foregoing paragraphs, amounts to protected activity under the FMLA.

83. Defendants knew that Plaintiff was engaged in protected activity under the FMLA.

84. Defendants engaged in prohibited conduct under the FMLA by interfering with Plaintiff's rights provided under the Act.

85. Defendants engaged in further prohibited conduct under the FMLA by retaliating against Plaintiff for invoking protections of the Act.

86. As described above, Defendants terminated Plaintiff.

87. Defendants' stated reason for terminating Plaintiff is false, misleading, misrepresentative, and pretextual.

88. Defendants' actions, and the actions of their agents, representatives, and employees, were intentional, wanton, willful, malicious, and taken in bad faith, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

89. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered injuries and damages including, but not limited to: loss of career opportunities; loss of fringe and retirement benefits; mental anguish; anxiety about her future; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT II

**WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY**

90. Plaintiff realleges all prior paragraphs as if they were fully set forth herein.

91. During her employment with Defendants, Plaintiff failed to and refused to violate laws, statutes, regulations, rules, and/or executive orders promulgated

pursuant to law, and refused to acquiesce in Defendants' violations of law, statutes, regulations, rules, and/or executive orders promulgated pursuant to law, all as set forth above.

92. Plaintiff's termination was in retaliation for her failure and refusal to violate or acquiesce in violations of law.

93. Plaintiff's treatment and termination violated the clearly established public policy of the State of Michigan — that an employer may not discharge an employee because she fails to or refuses to violate the law, or reports violations of the law, in the course of employment.

94. Plaintiff exercised a statutory right, entitlement, and/or benefit to take leave from work.

95. Both the EPSLA and the EFMLEA contain explicit legislative statements prohibiting the discharge, discipline, and other adverse treatment of employees who act in accordance with those statutory rights, entitlements, and/or benefits.

96. Plaintiff's treatment and termination violated the clearly established public policy of the State of Michigan — that an employer may not discharge an employee where there are explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty.

97. Defendants' actions, and the actions of their agents, representatives, and employees, were intentional, wanton, willful, malicious, and taken in bad faith, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

98. As a direct and proximate result of Defendants' actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

99. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered injuries and damages including, but not limited to: loss of career opportunities; loss of fringe and retirement benefits; mental anguish; anxiety about her future; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## **RELIEF REQUESTED**

Plaintiff demands judgment against Defendants as follows:

**A.    LEGAL RELIEF**

    1.    Compensatory damages in whatever amount Plaintiff is found to be entitled;

    2. Exemplary damages in whatever amount Plaintiff is found to be entitled;

    3. Punitive damages in whatever amount Plaintiff is found to be entitled;

    4. Liquidated damages in whatever amount Plaintiff is found to be entitled; and

    5. An award of interest, costs, reasonable attorney fees, and expert witness fees.

**B. EQUITABLE RELIEF**

    1. An injunction from this Court prohibiting any further acts of wrongdoing or retaliation against Plaintiff;

    2. Declaratory relief stating that Defendants terminated Plaintiff in violation of public policy;

    3. An award of front pay;

    4. An award of interest, costs, and reasonable attorney fees; and

    5. Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: August 11, 2020

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)

Attorney for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

## JURY DEMAND

Plaintiff Polina Milman, by and through her attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause that are so triable.

Dated:  August 11, 2020	**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Attorney for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com