## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**POLINA MILMAN**, *an individual,*

                Plaintiff,                Case No. 20-cv-12154
                                            Hon. Stephen J. Murphy III

v.

**FIEGER & FIEGER, P.C., D/B/A FIEGER,**
**FIEGER, KENNEY & HARRINGTON, P.C.**,
*a Michigan corporation; and,* **GEOFFREY**
**FIEGER**, *an individual, sued in his individual*
*and official capacity,*

                Defendants.

_____

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED COMPLAINT AND REQUEST FOR SANCTIONS

Pursuant to Fed. R. Civ. P. 12(b)(6) and L.R. 7.1, Defendants Fieger & Fieger, P.C., d/b/a Fieger, Fieger, Kenney & Harrington, P.C. and Geoffrey Fieger, move this Court to dismiss, with prejudice, Plaintiff Polina Milman's First Amended Complaint in its entirety, and award Defendants their attorneys' fees and costs incurred in the defense of this action.

Defendants requested, but did not receive, from Plaintiff concurrence in the relief sought in this Motion.  Hence, it is necessary to bring this Motion before the Court for hearing and oral argument.

Respectfully Submitted,

Dated: November 19, 2020

/s/: *Thomas P. Vincent*
**PLUNKETT COONEY**
Thomas P. Vincent (P32794)
Robert G. Kamenec (P35283)
Courtney L. Nichols (P75160)
Attorneys for Defendants

AND

/s/: *Michael N. Hanna*
**MORGAN & MORGAN, P.A.**
Michael N. Hanna (P81462)
Haba N. Yono (P81114)
Attorney for Defendants

AND

/s/: *Geoffrey N. Fieger*
**FIEGER & FIEGER, P.C.**
Geoffrey N. Fieger (P30441)
Attorney for Defendants

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**POLINA MILMAN**, *an individual,*

                        Plaintiff,                     Case No. 20-cv-12154
                                               Hon. Stephen J. Murphy III

v.

**FIEGER & FIEGER, P.C., D/B/A FIEGER,**
**FIEGER, KENNEY & HARRINGTON, P.C.**,
*a Michigan corporation; and,* **GEOFFREY**
**FIEGER**, *an individual, sued in his individual*
*and official capacity,*

                        Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED <u>COMPLAINT AND REQUEST FOR SANCTIONS</u>

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ iii

STATEMENT OF ISSUES PRESENTED ................................................... viii

CONTROLLING AUTHORITIES ................................................................ x

I.   Introduction .......................................................................................... 1

II.  Plaintiff's Recitation of the Facts in Her First Amended Complaint .................... 3

III. Argument ............................................................................................ 6

   A.  Standard of Review ........................................................................ 6

   B.  Plaintiff Fails to State an FMLA Interference Claim ............................. 7

      1.  Plaintiff Was Not Entitled to Leave Under the FMLA .................... 8

         a. Plaintiff Does Not Allege that her Child Suffered from a "Serious Health Condition" as defined by the FMLA ................................. 8

            i.   Plaintiff fails to allege that her son suffered from a qualifying "illness, injury, impairment or physical or mental condition" as defined by the FMLA ................................. 8

            ii.  Plaintiff does not allege that her son suffered from a serious health condition that required inpatient care ......................... 10

            iii. Plaintiff fails to allege that her son received continuing treatment by a healthcare provider ......................................... 11

         b.  Plaintiff Cannot State a Viable Claim under the EFMLEA ...................... 13

      2.  Plaintiff Failed to Provide Notice of FMLA Leave ......................... 14

   C.  Plaintiff Fails to State a FMLA Retaliation Claim .............................. 15

   D.  Plaintiff Fails to State a Public Policy Wrongful Discharge Claim ................. 16

      1.  Plaintiff has failed to identify a well-established legislative enactment or law that was in effect at the time of her discharge, barring her public policy discharge claim ........................................................ 18

      2.  Plaintiff alleged public policy discharge claims are also preempted ............. 20

   E.  Plaintiff Fails to State a Defamation Claim ......................................... 22

1.  Plaintiff's defamation claim fails because the statements alleged are opinions 23

2.  Plaintiff was a limited-purpose public figure .................................................... 25

F.  Plaintiff Fails to State a False Light Claim ......................................................... 27

G.  Conclusion/Relief Requested .............................................................................. 28

# INDEX OF AUTHORITIES

Cases

*Anderson v. McIntosh Const., LLC,*
   597 F. App'x 313 (6th Cir. 2015) ................................................................ ix, 14, 15, 16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................... ix, 7

*Bauer v. Dayton-Walther Corp.,*
   910 F. Supp. 306 (E.D. KY, 1996) ............................................................... 10

*Beaver v. RGIS Inventory Specialists, Inc.,*
   144 F. App'x 452 (6th Cir. 2005) .................................................................. ix, 9

*Bell Atl. Corp. v. Twombly,*
   550 U.S 544 (2007) ............................................................................................... 7

*Bond v. Abbott,*
   *Lab.,* 7 F. Supp. 2d 967 (N.D. Ohio 1998) ................................................ 9, 12

*Brannon v. Oshkosh B'Gosh,*
   897 F. Supp. 1028 ................................................................................................ 9

*Brohm v. JH Properties, Inc.,*
   149 F.3d 517 (6th Cir. 1998) ........................................................................ ix, 14

*Clark v. ABC, Inc.,*
   684 F.2d 1208 (6th Cir.1982) ....................................................................... 25, 26

*Cobb v. Time, Inc.,*
   278 F.3d 629 (6th Cir.2002) ......................................................................... 25

*Collins v. Detroit Free Press, Inc.,*
   245 Mich. App. 27 (2001) ............................................................................ 27

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,*
   508 F.3d 327 (6th Cir. 2007) ....................................................................... 5

*Covell v. Spengler,*
   141 Mich. App. 76 (1985) ............................................................................ 18, 19

*DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC,*
    2012 WL 5906870 (E.D. Mich. Nov. 26, 2012) ............................................................. 6

*Donald v. Sybra, Inc.,*
    667 F.3d 757 (6th Cir. 2012).......................................................................................... 7

*Dudewicz v. Norris-Schmid, Inc.,*
    443 Mich. 68 (1993) ...............................................................................................ix, 20, 21

*Duran v. Detroit News, Inc.,*
    200 Mich. App. 622 (1993) ......................................................................................... 28

*Early Detection Ctr., P.C. v. New York Life Ins Co,*
    157 Mich. App. 618 (1986) ......................................................................................... 28

*Elias v. Pitt, McGehee, Palmer, Rivers & Golden, P.C.,*
    2010 WL 4683912 (E.D. Mich. Nov. 10, 2010) ........................................................ 13

*Gertz,*
    418 U.S. ...............................................................................................................25, 26

*Ghanam v. Does,*
    303 Mich.App. 522, (2014) ......................................................................................... 22

*Gipson v. Vought Aircraft Indus., Inc.,*
    387 F. App'x 548 (6th Cir. 2010) ......................................................................12, 14, 16

*Greenbelt Cooperative Publ'g Ass'n v. Bresler,*
    398 U.S. 6 (1970)......................................................................................................22, 24

*Hazime v. Fox TV Stations,*
    No. 2013 WL 4483485 ................................................................................................. 6

*Herbert v. Lando,*
    441 U.S. 153 (1979)...................................................................................................... 25

*Humenny v. Genex Corp.,*
    390 F.3d 901 (6th Cir. 2004) .............................................................................. ix, 17, 18, 20

*Ireland v. Edwards,*
    230 Mich. App. 607 (1998) ......................................................................................... 27

*Johnson v. McGraw-Hill Cos.,*
    1998 WL 1083502 (E.D. Mich. 1998) ........................................................................ 28

*Kevorkian v. American Medical Association*,
  237 Mich.App. 1 (1999) ................................................................................ 22, 25

*Landgraf v. USI Film Prod.*,
  511 U.S. 244 (1994) ........................................................................................ 14

*Landin v. Healthsource Saginaw, Inc.*,
  305 Mich. App. 519 (2014) ............................................................................ 17

*Lewandowski v. Nuclear Mgmt. Co., LLC*,
  272 Mich. App. 120 (2006) .................................................................... 20, 21, 22

*LULAC v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) ............................................................................ 7

*Marcone v. Penthouse Int'l*,
  754 F.2d 1072 ................................................................................................... 25

*McMillian v. Potter*,
  130 F. App'x 793 (6th Cir. 2005) ................................................................... 16

*Milkovich v. Lorain Journal*,
  497 U.S. 1 (1990) ............................................................................................ 22

*Morganroth v. Whitall*,
  161 Mich. App. 785  (1987) .................................................................. 22, 23, 24

*Muray v. Dawn Foods, Inc.*,
  2010 WL 4063731 ........................................................................................... 20

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ........................................................................................ 25

*Olsen v. Ohio Edison Co.*,
  979 F. Supp. 1159 (N.D. Ohio 1997) .............................................................. 12

*Papasan v. Allain*,
  478 U.S. 265 (1986) .......................................................................................... 7

*Roberts v. Human Dev. Ass'n*,
  4 F. Supp. 2d 154 (E.D.N.Y. 1998) ................................................................ 10

*Robinson v. City of Detroit*,
  462 Mich. 439 (2000) ...................................................................................... 19

*Rouch v. Enquirer & News of Battle Creek,*
440 Mich. 238 (1992) .................................................................................22, 23, 24

*Seidle v. Provident Mut. Life Ins. Co.,*
871 F.Supp. 238 (E.D.Pa.1994) .................................................................... 10

*Shuttleworth v. Riverside Osteopathic Hosp.,*
191 Mich. App. 25 (1991) .............................................................................. 18

*Steaks Unlimited, Inc. v. Deaner,*
623 F.2d 264 (3d Cir. 1980) ........................................................................... 26

*Suchodolski v. Mich. Consol. Gas Co.,*
412 Mich. 692 (1982) ...........................................................................ix, 17, 19

*Terrien v. Zwit,*
467 Mich. 56 (2002) ...................................................................................... 17

*Tomkiewicz v. Detroit News, Inc.,*
246 Mich. App. 662 (2001) ........................................................................... 27

*Toussaint v. Blue Cross & Blue Shield of Michigan,*
408 Mich. 579 (1980) .................................................................................... 16

*Van v. Zahorik,*
460 Mich. 320 (1999) .................................................................................... 17

*Weiler v. Draper Chevrolet Co.,*
2012 WL 3758732 (E.D. Mich. Aug. 29, 2012) ............................................ 13

*Whitworth v. Consol. Biscuit Co.,*
2007 WL 1075774 (E.D. Ky. Apr. 6, 2007) .................................................. 11

*Wolston v. Reader's Digest Assoc., Inc.,*
433 U.S. 157 (1979) ....................................................................................... 26

Statutes

29 U.S.C. 2611(11)....................................................................... 8, 10, 11, 13

29 U.S.C. 2612(a)(1)(A)-(E)............................................................................ 8

29 U.S.C. 2612(a)(1)(A)-(F) .......................................................................... ix

29 U.S.C. 2612(a)(1)(B) ................................................................................. 8

29 U.S.C. 2612(a)(1)(F) ........................................................................... 8, 13

29 U.S.C. 2615, app ..................................................................................... 21

M.C.L. § 600.2911(6) .................................................................................... 25

Rules

18 (9th Cir ..................................................................................................... 26

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 6, 7

Fed. R. Civ. P. 12(e) ........................................................................................ 1

Other Authorities

L.R. 7 ............................................................................................................... 1

S. Rep. No. 103–3 ............................................................................................ 9

## STATEMENT OF ISSUES PRESENTED

1.      Should the Court dismiss Plaintiff's Family Medical Leave Act ("FMLA") claim where Plaintiff fails to allege a qualifying illness as defined by the FMLA?

> Plaintiff's Answer: No.
> Defendants' Answer: Yes.

2.      Should the Court dismiss Plaintiff's FMLA claim where Plaintiff fails to allege that her son received inpatient care or continuing treatment by a healthcare provider as defined by the FMLA?

> Plaintiff's Answer: No.
> Defendants' Answer: Yes.

3.      Should the Court dismiss Plaintiff's FMLA claim based on the Emergency Family and Medical Leave where the statute was not yet operational or effective?

> Plaintiff's Answer: No.
> Defendants' Answer: Yes.

4.      Should the Court dismiss Plaintiff's FMLA claim where Plaintiff fails to provide notice of FMLA leave?

> Plaintiff's Answer: No.
> Defendants' Answer: Yes.

5.      Should the Court dismiss Plaintiff's Public Policy Wrongful Discharge claim, which is based on the Families First Coronavirus Response Act that was not yet operational or effective at the time of Plaintiff's termination?

> Plaintiff's Answer: No.
> Defendants' Answer: Yes.

6.      Should the Court dismiss Plaintiff's Public Policy Wrongful Discharge claim when the Families First Coronavirus Response Act does not support any of the public policy exceptions?

> Plaintiff's Answer: No.
> Defendants' Answer: Yes.

7.      Should the Court dismiss Plaintiff's Defamation claim where she has failed to establish the existence of an actionable statement and the alleged statements are privileged as a matter of law?

        Plaintiff's Answer: No.
        Defendants' Answer: Yes.


8.      Should the Court dismiss Plaintiff's False Light claim where Plaintiff's counsel broadcasted her allegations to the public, making her a public figure for a limited purpose, and Defendant Geoffrey Fieger responded with his opinion of the claims asserted by Plaintiff and her counsel?

        Plaintiff's Answer: No.
        Defendants' Answer: Yes.

## CONTROLLING AUTHORITIES

29 U.S.C. 2612(a)(1)(A)-(F)

29 C.F.R. 825.113(d)

*Anderson v. McIntosh Const., LLC*, 597 F. App'x 313 (6th Cir. 2015)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452 (6th Cir. 2005)

*Brohm v. JH Properties, Inc.*, 149 F.3d 517 (6th Cir. 1998)

*Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68 (1993)

*Humenny v. Genex Corp.*, 390 F.3d 901 (6th Cir. 2004)

*Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692 (1982)

## I.    Introduction

On August 11, 2020, Plaintiff filed her original complaint, alleging that Defendants

discharged her from her employment in violation of the Family and Medical Leave

Act ("FMLA") and Michigan public policy.  Specifically, she claimed that Defendants

interfered with and retaliated against her for exercising her rights under the FMLA,

and wrongfully discharged her in violation of the public policy articulated in two

sections of the Families First Coronavirus Response Act ("FFCRA"): the Emergency

Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave

Expansion Act ("EFMLEA").

Plaintiff's claims garnered media attention through the efforts of her counsel,

Deborah Gordon. Gordon also provided commentary to news media about her client

and the lawsuit.[1]  Gordon also spoke about Fieger being a "person of privilege" who

flies on "private planes" and has "vacation homes." Upon request, Fieger provided a

response, summarizing his opinion of Plaintiff's allegations and why he believes them

to be without legal merit.  On October 8, 2020, Plaintiff amended her Complaint, and

added a defamation and false light claim based on Fieger's response to Plaintiff's (and

Gordon's) public attacks upon him.   Plaintiff alleges that Fieger's statements are

---

[1] Simultaneous with the filing of this lawsuit, and in the midst of a global pandemic, Gordon thrust her client into the public eye by providing interviews with various news outlets about her client and the case she had just filed against Defendants. *See* **Exhibit** ("**Ex.**") **A**. Plaintiff's lawsuit repeatedly references COVID-19 and discusses the FFCRA, the origin of the virus, and the government's response to COVID-19. But in the end, Plaintiff does not actually claim *anyone* had COVID-19, or that Defendants violated the FFCRA, which was not even in effect at that time.

defamatory and harm her reputation, yet her counsel republished these very same articles and interviews (that contain these statements) on her firm's website, resulting in the further dissemination of same. *See* **Ex. B**.

Each and every one of Plaintiff's claims in her First Amended Complaint fail as a matter of law.   First, Plaintiff's allegations regarding her son do not constitute a "serious health condition," as defined by the FMLA.   Instead, Plaintiff only alleges that she was "concerned" because her child *previously* had a viral infection known as Respiratory Syncytial Virus ("RSV"); not that her son *contemporaneously* suffered from *any* qualifying illness, as required under the FMLA.   Second, Plaintiff does not state a claim under the EFMLEA because the statute was not operational or in effect at the time of her termination.   Third, Plaintiff's request to work remotely, not for a leave of absence, is insufficient to trigger the FMLA's protections.

Perhaps recognizing the futility of an FMLA claim, Plaintiff also filed a public policy wrongful discharge tort claim to circumvent the fact that the FFCRA was not in effect at the time of her discharge.   Plaintiff cannot bypass the FFCRA's clear language, which expressly identifies April 1, 2020–nearly two weeks *after* her discharge–as its operational date, and April 2, 2020 as its effective date.   Even if the FFCRA was effective, its very existence would preclude a public policy wrongful discharge claim, because the FFCRA's remedies are exclusive and not cumulative.

Plaintiff's new tort claims are also without legal merit.  Fieger's *opinions* concerning Plaintiff's public allegations, and his response to her attorney's actions in placing her in the public eye are not actionable as a matter of law.

For the reasons set forth in greater detail below, Defendants respectfully request that the Court grant their Motion in its entirety, dismiss Plaintiff's First Amended Complaint with prejudice, and award Defendants their attorneys' fees and costs incurred for having to defend this frivolous lawsuit.

## II.   Plaintiff's Recitation of the Facts in Her First Amended Complaint[2]

In May 2018, Defendants hired Plaintiff.  D.E. 14, ¶ 9.  According to Plaintiff, on Friday, March 13, 2020, her children's childcare facility announced that it would close at the end of day and remain closed throughout the following week. *Id.* at ¶ 21.

On Saturday, March 14, 2020, Plaintiff claims she emailed one of Defendants' managing attorneys, James Harrington, "to inform him that her children's daycare facility was closed because of Covid-19." *Id.* at ¶ 26.  The next day, Sunday, March 15, 2020, Plaintiff claims she emailed Harrington to allegedly express concerns about COVID-19.  *Id.* at 27.  Plaintiff explained that her son *previously* had a bout with a common childhood illness, RSV, and spent five days in the hospital at that time, that he recently had another episode which required him to use a nebulizer, and that she was "worried her son's *previous* bout with RSV left him particularly vulnerable to

---

[2] While Defendants deny any allegation or inference of wrongdoing, Defendants acknowledge the factual allegations in Plaintiff's First Amended Complaint solely for the purposes of this Motion to Dismiss.

contracting COVID-19." *Id.* at ¶¶ 28-30 (emphasis added).  Plaintiff claims that she "sought to *work from home*" on both Monday, March 16 and Tuesday, March 17, *Id.* at ¶ 31 (emphasis added); *not* that she was seeking medical leave.  Harrington instructed her to contact Fieger concerning her request to work from home, and told her that if her request was denied, she could apply her personal time off.  *Id.* at ¶ 32.  On Monday, March 16, Fieger denied Plaintiff's remote work request.  *Id.* at ¶ 37.

On Tuesday, March 17, 2020, Marc Berlin, Plaintiff's direct supervisor, asked Plaintiff if she planned to return to work on Thursday, March 19.  *Id.* at ¶ 42.  In response, Plaintiff claims that she "explained that she planned to come into the office but that her children's daycare facility remained closed because of concerns about COVID-19."  *Id.* at ¶ 43. Plaintiff also claims that "[a]s the day progressed, [her] son developed an occasional cough, runny nose, and gastrointestinal issues." *Id.* at ¶ 45.

Plaintiff then claims that on Wednesday, March 18, her "son's symptoms persisted throughout the day, with his gastrointestinal issues progressing to diarrhea." *Id.* at ¶ 54.  Thereafter, Berlin emailed Plaintiff to confirm she would return to the office on Thursday, March 19, and Plaintiff "responded affirmatively."  *Id.* at ¶¶ 56-57.  However, on Thursday, March 19, 2020, Plaintiff emailed Wanda Lovelace of Human Resources—*not* Fieger, Harrington, or Berlin—and stated:

> Wanda, my child is *showing the beginnings of some mild symptoms I would normally associate with a cold*.  Under these circumstances I can't dismiss any symptoms especially in a child.  I strongly feel I need stay away from the office if at all possible at this time.  If unpaid time away from the office is an option and the only option I would do that.  Let me know.

Plaintiff's March 19, 2020 Email, attached as **Ex. C** (emphasis added);[3] *see also* D.E. 14, ¶¶ 59-60.  In response, Lovelace advised Plaintiff that she could work remotely for the rest of week.  D.E. 14, ¶ 61.  Plaintiff worked remotely on Thursday, March 19. *Id.* at ¶ 63.   Subsequently, around 5 p.m. on March 19, Defendants terminated Plaintiff's employment. *Id.* at ¶ 64.[4]

On August 11, 2020, six months later, Plaintiff filed her original complaint. *Id.* at ¶ 74.  On August 12, 2020, the Detroit Free Press published an Article extensively covering the Plaintiff's lawsuit.  *Id.* at ¶ 75; *See* **Ex. A**.  In the articles referenced in Plaintiff's First Amended Complaint, Plaintiff's attorney Gordon attacks Fieger:

> 'This was a needless termination of a young mother and attorney who simply wanted to do her job and needed a few days off because her child was experiencing COVID symptoms'; 'It should have been no problem' to provide the time off; 'Fieger sent a nasty letter firing [Plaintiff]'; Gordon has received a lot of COVID-19-related termination cases, 'but didn't expect it from a law firm'; 'that [t]his is exactly what employers should not be doing'; and that the manner in which Plaintiff was let go was 'troubling'; 'When you're a person of privilege you can have private planes and vacation homes and all the child care you want'; 'You can't go into federal court as a publicity stunt. I've been doing this for 40 years I don't need to be told by Geoff Fieger what I'm doing or why I'm doing it. I really suggest, if he's concerned about it, he brush up on employment law.'

---

[3] Because Plaintiff's First Amended Complaint refers to certain emails, which are integral to her claims, the Court may consider them in this Motion to Dismiss.  *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

[4] While Defendants strongly deny the narrative presented, Defendants will not delve into the basis for termination because it is irrelevant for the purposes of this motion.

**Ex. A**.[5]  In response, Fieger is alleged to have provided opinions regarding Gordon's claims, which were published by local media outlets.  *Id.* at ¶¶ 77-79.  Specifically, Plaintiff alleges that Fieger referred to her as an "'awful employee' and indicat[ed] that she was dishonest about her attempts to work from home to care for her son" [without quotes]; that Plaintiff was "just a person looking for money"; and that she "really didn't have any legal skills whatsoever."  *Id.*  Gordon herself disseminated these articles about the case, which include Fieger's comments, on her own firm website and business Facebook page (apparently for business solicitation purposes).

### III. <u>Argument</u>

#### A. Standard of Review

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."

---

[5] Where defamation and related claims are based on a broadcast referenced in the complaint, a court may properly review the broadcast in its entirety in the context of a 12(b)(6) motion. S*ee DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC*, 2012 WL 5906870 (E.D. Mich. Nov. 26, 2012) (ruling in a defamation case that the DVD of a broadcast would be considered by the court in ruling on the defendant's motion to dismiss); H*azime v. Fox TV Stations*, No. 2013 WL 4483485 (E.D. Mich. Aug. 19, 2013 (considering, in the context of a rule 12(b)(6) motion, a DVD of the television broadcast that plaintiffs referenced in their complaint for defamation and other torts).  The other articles referenced in the First Amended Complaint can be found here: https://www.fox2detroit.com/news/ex-employee-sues-geoffrey-fieger-saying-he-denied-her-from-working-at-home-with-sick-child; https://www.clickondetroit.com/news/local/2020/08/13/geoffrey-fieger-sued-by-employee-who-said-she-was-fired-after-requesting-time-off-to-care-for-sick-child/

Fed. R. Civ. P. 8(a)(2).   These allegations must be "more than 'labels and conclusions'" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S 544, 545 (2007)).   "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court must accept well-pled factual allegations in the complaint as true, but need not accept the plaintiff's legal conclusions or unwarranted factual inferences.   *See e.g., Iqbal*, 556 U.S. at 678; *LULAC v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007); *Papasan v. Allain,* 478 U.S. 265, 286 (1986).   To survive a motion to dismiss, a complaint's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."  *LULAC,* 500 F.3d at 527.

## B. Plaintiff Fails to State an FMLA Interference Claim

To establish FMLA interference, Plaintiff must plead:

(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (internal quotation marks and citation omitted).  Plaintiff has failed to plead facts establishing that she was entitled to leave under the FMLA, or that she gave Defendants appropriate notice of her

desire to take leave under the Act, or that she was denied benefits to which she was entitled.

### 1.   Plaintiff Was Not Entitled to Leave Under the FMLA

Plaintiff fails to state an FMLA claim because she fails to allege she was "entitled to leave" in the first place. The FMLA affords eligible employees with up to twelve weeks of unpaid leave to care for a child who has a "serious health condition," among other specifically-identified reasons, none of which are at issue here. *See* 29 U.S.C. 2612(a)(1)(A)-(E). The EFMLEA, which amended the FMLA, added COVID-19 as another applicable reason for protected leave. *See* 29 U.S.C. 2612(a)(1)(F).

### a.   Plaintiff Does Not Allege that her Child Suffered from a "Serious Health Condition" as defined by the FMLA

Plaintiff was not entitled to leave under 29 U.S.C. 2612(a)(1)(B) because she does not allege that her son was suffering from a "serious health condition". For purposes of FMLA, "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. 2611(11).

#### i.   Plaintiff fails to allege that her son suffered from a qualifying "illness, injury, impairment or physical or mental condition" as defined by the FMLA

The FMLA does not cover commonplace illnesses of short duration. In fact, the regulations *specifically exclude* from the definition of "serious health condition" "the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than

migraine, routine dental or orthodontia problems, periodontal disease, etc.", unless complications arise. *See* 29 CFR 825.113(d).  The Sixth Circuit has explained:

> The term 'serious health condition' is not intended to cover short-term conditions for which treatment and recovery are very brief.... Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few day...

*Beaver v. RGIS Inventory Specialists, Inc.,* 144 F. App'x 452, 455, n. 4 (6th Cir. 2005) (quoting S. Rep. No. 103–3, at 28 (1993)).  "Determining whether an illness qualifies as a serious health condition is a legal question that a plaintiff may not avoid simply by alleging it to be so."  *Bond v. Abbott Lab.*, 7 F. Supp. 2d 967, 974 (N.D. Ohio 1998) (internal quotation marks and citation omitted).

Here, Plaintiff merely alleges that her son was experiencing "mild symptoms" that she "would normally associate with a cold".  **Ex. C**; D.E. 14, ¶ 45.  Such symptoms "do *not* meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. 825.113(d); *see also, e.g., Bond*, 7 F. Supp. 2d at 974 ("The final regulations shed light on the minor and short-term conditions which are not covered under the FMLA. 29 C.F.R. § 825.114(c). Courts too have found that Congress never intended many illnesses and procedures to be covered under the Act.") (citing cases)); *Brannon v. Oshkosh B'Gosh*, 897 F. Supp. 1028, 1036 n. 8 (M.D. Tenn. 1995) ("Although the flu patient may pass the [regulatory] test, flu is specifically excluded from coverage" under the FMLA.)

The common cold and upset stomach are *specifically excluded* from coverage under the FMLA.  29 C.F.R. 825.113(d).  Moreover, even if Plaintiff believed her son's condition *could be* more serious, Plaintiff's speculative concerns do not transform "mild symptoms" that are "normally associated with a cold" into a qualifying "serious health condition."  *See Bauer v. Dayton-Walther Corp.*, 910 F. Supp. 306, 311 (E.D. KY, 1996) ("*The condition must be taken for what it was during the relevant time period, and not for what it could have conceivably become.*…The fact that [rectal bleeding] could have turned out to be something as serious as rectal cancer or as relatively insignificant as hemorrhoids is speculative and irrelevant.") (emphasis added).[6]  Therefore, Plaintiff fails to allege that her son suffered from a qualifying illness as defined by the FMLA.

### ii.  Plaintiff does not allege that her son suffered from a serious health condition that required inpatient care

---

[6] *See also Roberts v. Human Dev. Ass'n*, 4 F. Supp. 2d 154, 161–62 (E.D.N.Y. 1998) ("Plaintiff appears to argue that she responded to an alarming situation with proper precaution and that her ultimate diagnosis and the duration of her condition should not preclude the Act's coverage. Sympathetic as the court is to this argument, it would appear that this subjective approach to determining whether plaintiff had a serious health condition has no support in either the Act or its implementing regulations. While plaintiff was understandably startled by the sudden and unexpected onset of the symptoms she experienced, the Act does not appear to support the proposition that the potentiality of a serious health condition can transform what is actually a minor illness into a 'serious health condition' within the meaning of the Act."); *Seidle v. Provident Mut. Life Ins. Co.,* 871 F.Supp. 238, 246 (E.D.Pa.1994) ("[T]he FMLA and its implementing regulations defining 'serious health condition' are not concerned with the potential dangers of an illness but only with the present state of that illness.") (citing 29 U.S.C. § 2611(11))).

Aside from the fact that Plaintiff fails to allege her son suffered from any qualifying illness, Plaintiff's Amended Complaint is devoid of any allegations demonstrating that her son required "inpatient care in a hospital, hospice, or residential medical care facility". *See* 29 U.S.C. 2611(11). "Inpatient care" is defined as an "overnight stay" at "a hospital, hospice, or residential medical care facility." 29 C.F.R. § 825.114. Here, Plaintiff merely alleges that her son had "*previously contracted*" RSV. D.E. 14, ¶ 28 (emphasis added).[7] A previous bout of RSV is not a *current* serious health condition that requires an overnight stay in a medical care facility during the week of March 16, 2020. Similarly, Plaintiff does not allege that her son received any inpatient care to treat his cold-like symptoms, or any symptoms, during the week of March 16, 2020. *See* D.E. 14.

iii. **Plaintiff fails to allege that her son received continuing treatment by a healthcare provider**

Plaintiff also fails to allege that her son had a "serious health condition" that required "continuing treatment by a health care provider." 29 U.S.C. 2611(11). *See Whitworth v. Consol. Biscuit Co.*, 2007 WL 1075774, at *4 (E.D. Ky. Apr. 6, 2007) ("It is undisputed that Whitworth did not receive inpatient care in connection with the . . . absences. Therefore, she must show that she was suffering from a serious health

---

[7] According to the CDC, RSV is "a common respiratory virus that usually causes mild, cold-like symptoms." *See Respiratory Syncytial Virus Infection (RSV)*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/rsv/index.html (last visited August 31, 2020).

condition involving continuing treatment.");[8] *Bond, 7* F. Supp. 2d at 973 ("A plaintiff who has not been an inpatient but who claims to have suffered a 'serious health condition' under the FMLA must 'make a two-pronged showing of both an incapacity requiring absence from work and continuing treatment.'" (quoting *Olsen v. Ohio Edison Co.,* 979 F. Supp. 1159, 1164 (N.D. Ohio 1997))).

Here, Plaintiff references her son's *previous* bout with RSV, but does not allege that her son received continuing treatment in March 2020 by a healthcare provider for his past RSV infection. *See* D.E. 14, generally. *See Gipson v. Vought Aircraft Indus., Inc.,* 387 F. App'x 548, 556 (6th Cir. 2010) (holding that plaintiff failed to provide sufficient notice for FMLA because while plaintiff had previously undergone heart surgery, the record contained no evidence that defendant was on notice that plaintiff had ongoing heart problems for which he was receiving continuing treatment).

The only references in Plaintiff's First Amended Complaint about any illness her child might have suffered in March 2020 pertain to "mild symptoms" associated with a common cold, flu, and upset stomach.  Plaintiff claims that on March 18, 2020 her son developed an "occasional cough, runny nose, and gastrointestinal issues", which persisted throughout the day and progressed to diarrhea.  D.E. 14, ¶¶ 45, 54. On March 19, 2020, she admitted that his "mild symptoms" were what she would "normally associate with a cold." **Ex. C**.  Again, Plaintiff fails to identify a serious

---

[8] Unpublished cases are alphabetically attached hereto as **Ex. D.**

health condition and also fails to allege that her son was receiving inpatient care or continuing treatment by a healthcare provider, and her FMLA claim should therefore be dismissed.[9]

### b.   Plaintiff Cannot State a Viable Claim under the EFMLEA

Plaintiff was not qualified for leave to seek a remedy under the EFMLEA during the week of March 16, 2020, because that Act was not operational until April 1, 2020.  *See* 29 C.F.R. 826.10(b)(1) ("This part became operational on April 1, 2020, and effective on April 2, 2020.").  The Legislature stated directly that the EFMLEA is only in effect for a defined limited duration.  *See* 29 U.S.C. 2612(a)(1)(F) ("*During the period beginning on the date the Emergency Family and Medical Leave Expansion Act takes effect, and ending on December 31, 2020,* because of a qualifying need related to a public health emergency in accordance with section 2620 of this title.") (emphasis added).  "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."

---

[9] *See, e.g., Weiler v. Draper Chevrolet Co.,* 2012 WL 3758732, at *3 (E.D. Mich. Aug. 29, 2012) (granting defendant's 12(b)(6) motion to dismiss because "the complaint does not allege that Plaintiff received 'continuing treatment' - that is, it does not allege that Plaintiff was incapacitated for more than three consecutive days. *See* § 825.115(a))… In sum, Plaintiff does not allege *any* facts showing that Plaintiff (or her son) had a 'serious health condition' as that term is defined by FMLA and its implementing regulations."); *Elias v. Pitt, McGehee, Palmer, Rivers & Golden, P.C.,* 2010 WL 4683912, at *2 (E.D. Mich. Nov. 10, 2010) (granting defendant's 12(b)(6) motion to dismiss because plaintiff's factual allegations that her daughter suffered from severe separation anxiety and the documentation she provided to defendant from her daughter's therapist was "not enough to equate to an illness requiring 'inpatient care' or 'continuing care from a health care provider,' as required by the FMLA.") (quoting 29 U.S.C. 2611(11))).

*Landgraf v. USI Film Prod.,* 511 U.S. 244, 257 (1994).  Moreover, the Department of Labor's guidance on the FFCRA explicitly precludes retroactive application.  *Families First Coronavirus Response Act: Questions and Answers,* DEP'T OF LABOR, https://www.dol.gov/ agencies/whd/pandemic/ffcra-questions ("13. Are the paid sick leave and expanded family and medical leave requirements retroactive? *No.*") (emphasis added).  Thus, Plaintiff cannot allege a viable claim under the EFMLEA because she was terminated before April 1, 2020.

### 2.  Plaintiff Failed to Provide Notice of FMLA Leave

Plaintiff also fails to allege that she requested leave under the FMLA, because she did not request such leave.  An employer has no obligation to provide FMLA leave unless the employee provides notice of a qualifying reason and requests medical leave.  *See Brohm v. JH Properties, Inc.,* 149 F.3d 517, 523 (6th Cir. 1998) ("[N]othing in the statute places a duty on an employer to affirmatively grant leave without such a request or notice by the employee.  Rather, to invoke the protection of the FMLA, an employee must provide notice *and* a qualifying reason for requesting the leave.") (internal citations omitted)); *see also Anderson v. McIntosh Const., LLC,* 597 F. App'x 313, 315 (6th Cir. 2015).  While an employee need not explicitly reference the FMLA, "an employee must request leave and provide enough information for her employer to know that the FMLA applies to the request." *Anderson,* 597 F. App'x at 314; *Gipson,* 387 F. App'x at 555; *Brohm,* 149 F.3d at 523 ("the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the

employee's request to take time off for a serious health condition.") (internal

quotation marks and citation omitted)).

In *Anderson*, the Sixth Circuit held that plaintiff's request to work remotely is

not a request for leave under the FMLA.  597 F. App'x at 314.  There, the plaintiff

requested to work from home to cope with stress caused by a coworker.  Finding that

plaintiff's request did not provide sufficient notice to the employer that she sought to

utilize FMLA, the Sixth Circuit reasoned that "*[W]orking from home is still working; so that

request was not a request for leave under the FMLA*."  *Id.* (emphasis added).  Similarly, here,

Plaintiff *never* requested FMLA-qualifying medical leave, but instead, requested to

work remotely.  Because Plaintiff never requested FMLA-qualifying medical leave,

Defendants are not required to provide such leave.  Thus, Plaintiff's FMLA

interference claim also fails on this ground alone.[10]

## C. Plaintiff Fails to State a FMLA Retaliation Claim

Plaintiff's FMLA retaliation claim also fails because Plaintiff never availed

herself of a protected right under the FMLA.  "In order to establish a claim of

retaliation under FMLA, a plaintiff must show that (1) she availed herself of a

protected right under the FMLA, (2) she was adversely affected by an employment

---

[10] Plaintiff's First Amended Complaint admits that she never requested an FMLA-qualifying leave but, instead, asked for "unpaid time away from the office".  *See* **Ex. C**; *see also* D.E. 14, ¶¶ 60-61.  The reason given by Plaintiff was that her child was "showing the beginnings of some mild symptoms (Plaintiff) would normally associate with a cold".  *Id.*  No rational person could equate these two facts with leave qualifying notice satisfying the FMLA requirements.

decision, and (3) a causal connection exists between the exercise of the FMLA right and the adverse employment action." *McMillian v. Potter*, 130 F. App'x 793, 796 (6th Cir. 2005). The Sixth Circuit has consistently held that plaintiffs who fail to apprise their employers of their need for FMLA leave do not engage in protected activity under the FMLA, and thus, there is no viable retaliation claim. *See Anderson*, 597 F. App'x at 315 ("Anderson argues that McIntosh retaliated against her for engaging in protected activity under the FMLA. As shown above, Anderson never requested or took FMLA-protected leave. She has not alleged that she engaged in any other protected activity, so this argument also fails."); *Gipson*, 387 F. App'x at 557 ("Gipson's retaliation claim must fail because, as we have held, Gipson did not avail himself of a protected right under the FMLA by giving notice sufficient to apprise Vought that he was suffering from an FMLA-qualifying condition.") (internal quotation marks and citation omitted). Here, Plaintiff did not avail herself of a protected right under the FMLA because she was not entitled to leave under the FMLA; she failed to request or provide any notice of a FMLA-qualifying medical leave. Accordingly, Plaintiff's FMLA retaliation claim must be dismissed.

## D. Plaintiff Fails to State a Public Policy Wrongful Discharge Claim

In general, an at-will employee may be terminated at any time and for any reason. *See Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579 (1980). The Michigan Supreme Court, however, has recognized three very limited exceptions where discharge of an at-will employee is so contrary to public policy to be actionable:

> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for failing or refusing to violate the law in the course of employment; and (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.

See *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695-696 (1982); *Humenny v. Genex Corp.*, 390 F.3d 901, 907 (6th Cir. 2004) (recognizing *Suchodolski*'s three limited "public policy" exceptions to at-will employment). The *Suchodolski* exceptions of public policy must be well-grounded in law; otherwise, the Court would be engaged in making social policy. *See e.g.*, *Van v. Zahorik*, 460 Mich. 320, 327 (1999) ("As a general rule, making social policy is a job for the Legislature, not the courts."); *Terrien v. Zwit*, 467 Mich. 56, 67 (2002) ("The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. There is no other proper means of ascertaining what constitutes our public policy.") (Emphasis in original). Thus, "the three public policy exceptions recognized in *Suchodolski* entail an employee's exercising a right *guaranteed by law*, executing a duty *required by law*, or refraining from violating *the law*." *Landin v. Healthsource Saginaw, Inc.*, 305 Mich. App. 519, 526 (2014) (emphasis added).

Plaintiff's public policy discharge claim fails for a myriad of reasons. First, she has not, and cannot, identify a law or well-established legislative enactment effective at the time of her discharge that provides a foundation for her claim. No claim can avoid the intent of the legislature and wording of the statute itself. Second, the

FFCRA cannot form the foundation for her claim because it contains a specific anti-retaliation provision that preempts a common-law public policy discharge claim. Third, Plaintiff's First Amended Complaint does not contain any allegations demonstrating that she engaged in an activity that provides her protection from discharge pursuant to the narrowly-construed exceptions to Michigan's at-will employment doctrine.

> **1. Plaintiff has failed to identify a well-established legislative enactment or law that was in effect at the time of her discharge, barring her public policy discharge claim**

A threshold issue in a public policy claim is whether the plaintiff has "identified a well-established legislative enactment that addresses the particular conduct at issue." *Humenny*, 390 F.3d at 907.  The three exceptions to the at-will doctrine all require allegations pertaining to an *actual* law or legislative enactment.  Michigan law is well-settled that a plaintiff may not support a public policy wrongful discharge by relying on a statute *not yet in effect. See Shuttleworth v. Riverside Osteopathic Hosp.*, 191 Mich. App. 25, 28 (1991) (holding there was no pre-existing common law counterpart to Michigan's Whistleblower Protection Act ("WPA"), and thus, such a claim could not be pursued); *Covell v. Spengler,* 141 Mich. App. 76 (1985) (holding that no common-law cause of action for a discharge in retaliation for reporting violations existed before the passage of the WPA.)

In her First Amended Complaint, Plaintiff identifies the FFCRA as the *sole* basis for her public policy claim.  *See* ¶ 101.. At the time of her discharge, the FFCRA

was not in effect and thus, does not provide her with a statutory right to a job-protected leave. *See id.*  Therefore, Plaintiff cannot proceed under any of the three applicable exceptions.  She cannot demonstrate that she was "discharged in violation of an explicit legislative statement prohibiting discharge of employees who acted in accordance with a statutory right or duty." *See Suchodolski*, 412 Mich. at 695-696. Likewise, because the FFCRA was not a "law" or a "well-established legislative enactment" it is impossible for Plaintiff to demonstrate that she was discharged because she either: (1) refused to violate the FFCRA; or (2) exercised a right conferred by a "well-established legislative enactment." *See id.*

Because the FFCRA was not effective at the time of Plaintiff's discharge, this Court's inquiry should end here. The Legislature could have made the statute immediately effective at the time the FFCRA was enacted on March 18, 2020. However, it explicitly stated its intent *not* to do so by making the statute effective beginning on April 2, 2020.  The Michigan Supreme Court requires courts to follow the plain meaning and wording of the statutes enacted by the Legislature.   "*Where the language of the statute is clear and unambiguous, the Court must follow it.*"  *Robinson v. City of Detroit*, 462 Mich. 439, 459 (2000) (emphasis added).  Here, the language of the statute is clear and unambiguous and indicates that it is to become "operational on April 1, 2020 and effective on April 2, 2020." 29 C.F.R. 826.10(b)(1).  Consequently, Plaintiff had no rights under the FFCRA relative to her March 19, 2020 termination, and may not rely upon the FFCRA as the source of her public policy wrongful discharge claim.

### 2.  Plaintiff alleged public policy discharge claims are also preempted

"As a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative." *Dudewicz v. Norris-Schmid, Inc.,* 443 Mich. 68, 78 (1993); *See also Humenny*, 390 F.3d at 907 (6th Cir. 2004) (recognizing that "Michigan courts, however, have limited this 'public policy' exception by holding that '[a]s a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative.'") (quoting *Dudewicz*, 443 Mich. at 78))); *Muray v. Dawn Foods, Inc.,* 2010 WL 4063731, at *1, n 1 (E.D. Mich. Oct. 14, 2010) (Murphy, J.) (granting defendant's motion for summary judgment on state law wrongful termination claim because "such a claim cannot be maintained if there is already a statutory remedy covering a particular public policy concern.") (quoting *Lewandowski v. Nuclear Mgmt. Co., LLC,* 272 Mich. App. 120, 127 (2006))).

In *Dudewicz*, the plaintiff brought both a WPA claim and a public policy claim. The Michigan Supreme Court considered whether the public policy exception applies where an employer discharged an employee who filed a criminal complaint against a fellow colleague for an assault that occurred at work. *Dudewicz*, 443 Mich. at 70. There, the Court held that the WPA preempts any public policy claim arising out of the same facts, and held that a "public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Id.*

Plaintiff alleges a wrongful discharge public policy violation because the FFCRA contains explicit legislative statements prohibiting the discharge of employees who act in accordance with a statutory right. *See* D.E. 14, ¶¶ 100-101. The EPSLA and EFMLEA expressly prohibit discharge in retaliation for taking statutorily permitted leave which complies with requirements. *See* 29 C.F.R. 826.150(a) ("An Employer is prohibited from discharging, disciplining, or discriminating against any Employee because such Employee took Paid Sick Leave under the EPSLA."); 29 C.F.R. 826.151(a) ("The prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA, 29 U.S.C. 2615, apply to Employers with respect to Eligible Employees taking, or attempting to take, leave under the EFMLEA.") Accordingly, here, since there is an existing statutory remedy for a violation of law, there can be no common law counterpart.

Because the FFCRA serves as the exclusive remedy, Plaintiff's public policy discharge claim must be dismissed.   In *Lewandowski*, 272 Mich. App. at 129, the Michigan Court of Appeals rejected plaintiff's argument that *Dudewicz* only precludes a cause of action under the first *Suchodolski* exception when a statutory right exists, and the second and third *Suchodolski* exceptions could still survive.   *Lewandowski,* 272 Mich. App. at 129.   *Lewandowski* affirmed the trial court's denial of plaintiff's motion to amend his complaint to add a public policy claim, because no viable claim could ever exist under the second and third *Suchodolski* exceptions.   *Id.* at 126-129.

**E. Plaintiff Fails to State a Defamation Claim**

A plaintiff in a defamation action must show that the defendant made a false, defamatory and unprivileged statement about her. *See Rouch v. Enquirer & News of Battle Creek*, 440 Mich. 238, 251 (1992).  Under applicable Michigan law, unlike here, a "plaintiff claiming defamation must plead a defamation claim with specificity by identifying the *exact* language that the plaintiff alleges to be defamatory." *Ghanam v. Does*, 303 Mich.App. 522, (2014) (citation omitted). To be defamatory, the statement must "so harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." *Morganroth v. Whitall*, 161 Mich. App. 785 790 (1987). A court may determine—as a matter of law—that the words at issue do not rise to this level.  *Id.* at 789-90.

Mere statements of opinion do not provide a sufficient basis for a claim of defamation. *Kevorkian v. American Medical Association*, 237 Mich.App. 1, 5 (1999). Further, a plaintiff has a defamation claim only as to statements that are materially false.  *Rouch*, 440 Mich. at 259. If the "gist" or "sting" of the defendant's statement is accurate, then the plaintiff has no claim. *Id.*  The falsity requirement means that certain kinds of statements—such as rhetorical hyperbole or loose, figurative expression—cannot serve as the basis for a defamation claim. *See Greenbelt Cooperative Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970); *Milkovich v. Lorain Journal*, 497 U.S. 1 (1990). Under Michigan law, allegedly defamatory statements must be considered in the context of the entire publication or broadcast. *See Morganroth*, 161 Mich. App. at 790.

1.  **Plaintiff's defamation claim fails because the statements alleged are opinions**

The statements Plaintiff claims in her First Amended Complaint to support her defamation claim are that Fieger allegedly referring to her as: 1) an "awful employee"; 2) indicated that she was dishonest about her attempts to work from home to care for her son;[11] 3) that she was "just a person looking for money"; and 4) that she "really didn't have any legal skills whatsoever."  D.E. 14, ¶¶ 77-79.  These statements are manifestly opinions offered in response to Plaintiff's public allegations; none are materially false.  *See Rouch*, 440 Mich. at 259.

First, any statement that Plaintiff was an "awful employee" is obviously an opinion; it is also consistent with the firm's decision to terminate Plaintiff's employment. D.E. 14, ¶¶ 64, 78.   Plaintiff herself published her termination letter in the Original and First Amended Complaint, authored by Fieger, demonstrating his opinion that she was not a satisfactory employee.  *Id.* at ¶ 64. She also provided that letter to the press.

Second, it is Fieger's opinion that Plaintiff's allegations are false, as noted in the termination letter Plaintiff published.  *Id.*  Prior to providing any opinion in response to Gordon's media interviews, attacking Fieger, Plaintiff herself published that Fieger believes that she was dishonest about her attempts to work from home to care for her

---

[11] No quotation marks are included regarding this claim. Thus, Plaintiff is apparently editorializing about what she "thinks" a statement might have meant. It Is unclear what Plaintiff actually alleges was stated by Fieger since she does not include the statement in her First Amended Complaint

son.  ¶¶ 67-76.  At most, Plaintiff now alleges that Fieger reiterated the very same opinion that Plaintiff first published herself in her original Complaint.  *Id.*  Thereafter, Plaintiff's counsel re-published the articles containing this opinion on her firm's own website.  *See* **Ex. B**.  If Plaintiff and her counsel honestly viewed Fieger's opinion to be defamatory and injurious to her reputation, certainly they would not have published the termination letter, or republished the media interviews containing Fieger's opinions on Gordon's website.   Rather, the republishing by Gordon was done as an obvious method of advertising for more clients.

Fieger has an absolute right to offer a defense to the claims and commentary made by Plaintiff and her counsel to the media. One such valid defense is that she is not being truthful.  Such a defense is routine in litigation and falls far short of a "material falsity" so as to support a defamation claim.  *See Greenbelt*, 398 U.S. 6.

Third, it is pure opinion that Plaintiff, by filing her lawsuit, *is* a person looking for money. It is also true statement, evidenced by the fact that she is seeking compensatory damages in her First Amended Complaint. *See* D.E. 14.

Fourth, Fieger's alleged statement that Plaintiff "really didn't have any legal skills whatsoever" is, again, obviously an opinion based on her performance or lack thereof. *See id.; Morganroth,* 161 Mich. App. at 790.

None of the purported statements can support a defamation lawsuit because they are all statements of opinions republished by Plaintiff and her counsel themselves, to promote her lawsuit. Mere statements of opinion cannot provide a

Case 2:20-cv-12154-SJM-DRG   ECF No. 23, PageID.164   Filed 11/19/20   Page 38 of 42

sufficient basis for a defamation claim. *Kevorkian v. American Medical Association*, 237 Mich.App. 1, 5 (1999). Accordingly, Plaintiff's defamation claim must be dismissed.

### 2. Plaintiff was a limited-purpose public figure

Plaintiff's defamation claim also should be dismissed because she is a limited-purpose public figure. As a "public figure," Plaintiff must also establish that the defendant published the defamatory statement with "actual malice" – that is, with knowledge that it was false or with reckless disregard of its falsity. *Herbert v. Lando,* 441 U.S. 153, 156 (1979) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 280 (1964)); *see also* M.C.L. § 600.2911(6). Whether one is a public figure is a question of law to be determined by the courts. *Marcone v. Penthouse Int'l,* 754 F.2d 1072, 1081 n. 4 (3d Cir.1985); *see also Cobb v. Time, Inc.,* 278 F.3d 629, 637 (6th Cir.2002) ("The unique nature of the interest protected by the actual malice standard requires that reviewing courts conduct an independent review to determine whether that standard has been met.").

A limited-purpose public figure is a public figure with respect to "a limited range of issues," and she achieves that status by "voluntarily inject[ing] [her]self ... into a particular public controversy." *Gertz,* 418 U.S. at 351. Analyzing whether a plaintiff is a limited-purpose public figure proceeds in two stages. *Clark v. ABC, Inc.,* 684 F.2d 1208, 1218 (6th Cir.1982) (citing *Gertz,* 418 U.S. at 345, 352). "First, a 'public controversy' must exist." *Id.* "Second, the nature and extent of the individual's involvement in the controversy must be ascertained." *Id.*

At the second stage, the nature and extent of a plaintiff's participation in a public controversy is discerned by considering three factors: (1) the extent to which participation in the controversy is voluntary; (2) the extent to which there is access to channels of effective communication in order to counteract false statements; and (3) the prominence of the role played in the public controversy. *Clark,* 684 F.2d at 1218 (citing *Gertz,* 418 U.S. at 344-45, and *Wolston v. Reader's Digest Assoc., Inc.,* 433 U.S. 157, 165-68 (1979)).

Here, Plaintiff clearly qualifies as a limited-purpose public figure. Plaintiff's counsel voluntarily thrust Plaintiff into the media headlines, the very outlet from which her purported defamation claim is now derived. Accordingly, Plaintiff voluntarily injected herself into the public domain concerning her allegations. *See Gertz,* 418 U.S. at 351. It was Plaintiff, (and her attorney) not Fieger, who sought out and "invited public attention, comment, and criticism" through her media blitz. *See Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 274 (3d Cir. 1980).

While Plaintiff concedes (in her pleadings) the need to prove malice in this case, and includes a conclusory statement that Fieger's "public statements were made with actual malice", she has failed to plead *any* allegations to support this baseless conclusion. *See* D.E. 14, ¶113. At most, Fieger was asked to comment on pending litigation. At most, the alleged opinions are that Plaintiff's claims are without factual or legal merit; the statements were then voluntarily re-published by Plaintiff herself. *See* D.E. 1, generally. Plaintiff cannot claim defamation simply because she disagrees

with Fieger's opinion of her.  Because Plaintiff and her counsel deliberately made Plaintiff a limited-purposed public figure, any opinion of Fieger in response to her allegations does not support a claim of defamation and there are no allegations plead establishing malice.

## F.  Plaintiff Fails to State a False Light Claim

The Michigan Court of Appeals has recognized that a plaintiff cannot relabel a defamation claim as one for false light:

> It is clear that these [First Amendment] limitations are not exclusive to defamation claims. We conclude that these limitations apply to all of Plaintiffs' claims in this case [including false light]. Thus, because all of Plaintiffs' claims are based on the same statements, and because she cannot overcome the First Amendment limitations regarding these statements, summary disposition was properly granted with regard to all of Plaintiffs' claims.

*Ireland v. Edwards,* 230 Mich. App. 607, 624 (1998) (citation omitted). *See also Tomkiewicz v. Detroit News, Inc.,* 246 Mich. App. 662 (2001); *Collins v. Detroit Free Press, Inc.,* 245 Mich. App. 27, 32 (2001); *Johnson v. McGraw-Hill Cos.,* 1998 WL 1083502, at *3 (E.D. Mich. 1998) ("the same privileges that are available to defendants under defamation exist under a false light claim").

To maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position. *Duran v. Detroit News, Inc.,* 200 Mich. App. 622, 632 (1993); *Early*

*Detection Ctr., P.C. v. New York Life Ins Co*, 157 Mich. App. 618, 630 (1986). The individual accused of having invaded the plaintiff's privacy "must have had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Early Detection*, 157 Mich. App. at 630.

Plaintiff's false light claim fails for the same reasons her defamation claim fails. Plaintiff has not pled a single statement (allegedly uttered by Fieger) that would be viewed by a reasonable person to be "unreasonable and highly objectionable". *See Id.* Instead, she has merely summarized Fieger's initial response and opinions regarding her own allegations that she, herself, intentionally thrust into the public forum. Count IV of Plaintiff's First Amended Complaint should therefore be dismissed.

## G. Conclusion/Relief Requested

WHEREFORE, Defendants respectfully request that this Court grant its Motion to dismiss the action with prejudice, and further request costs and attorney fees so wrongfully sustained to dismiss Plaintiff's First Amended Complaint, brought solely to embarrass and harass Defendants.

Respectfully Submitted,

Dated: November 19, 2020

/s/: *Thomas P. Vincent*
**PLUNKETT COONEY**
Thomas P. Vincent (P32794)
Robert G. Kamenec (P35283)
Courtney L. Nichols (P75160)
Attorneys for Defendants

AND

/s/: *Michael N. Hanna*
**MORGAN & MORGAN, P.A.**
Michael N. Hanna (P81462)
Haba N. Yono (P81114)
Attorney for Defendants

AND

/s/: *Geoffrey N. Fieger*
**FIEGER & FIEGER, P.C.**
Geoffrey N. Fieger (P30441)
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all participating attorneys.

/s/: *Samantha M. Teal*
**Legal Assistant to Geoffrey N. Fieger**