UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLINA MILMAN,

               Plaintiff,

v.

FIEGER & FIEGER, P.C. and
GEOFFREY FIEGER,

               Defendants.

                                                  /

Case No. 2:20-cv-12154

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [23]**

Plaintiff Polina Milman sued Defendant Geoffrey Fieger and his law firm for violating the Family Medical Leave Act ("FMLA") and wrongful discharge in violation of Michigan public policy. ECF 1, PgID 13–16. Within twenty-one days of serving the complaint, Plaintiff amended it to include defamation and false light claims against Fieger. ECF 14, PgID 104–06.

A month later, Defendants moved to dismiss the first amended complaint. ECF 23. In the motion, Defendants requested that the Court sanction Plaintiff because the first amended complaint was "brought solely to embarrass and harass Defendants." ECF 23, PgID 167; *see also* ECF 32, PgID 328, n.1. The Court held a hearing to address whether the Court should dismiss the FMLA claim. ECF 35, PgID 354. And the Court took the motion under advisement. For the reasons below, the Court will grant in part and deny in part the motion to dismiss and will deny the sanctions request.

1

## BACKGROUND[1]

Plaintiff worked as an attorney at Fieger's law firm for two years. ECF 14, PgID 90. During those years, Plaintiff raised two children. *Id.*

In March 2020, the COVID-19 virus began to spread throughout the United States. Around that time, the law firm scheduled employees—including Plaintiff—to work from home on certain days as a test of the firm's ability to work remotely. *Id.* at 91. On Friday, March 13, President Donald J. Trump declared the COVID-19 pandemic a national emergency. *Id.* Later that day, the daycare center for Plaintiff's children announced it would close the next week due to COVID-19 concerns. *Id.*

Because of the closure, Plaintiff emailed a partner at the firm with a request to work from home on Monday and Tuesday, March 16 and 17. *Id.* at 92. The partner informed Plaintiff that he could not approve her to work from home, but she should contact Fieger directly. *Id.* at 93. The partner also advised Plaintiff to use her personal time off if Fieger denied the request. *Id.*

On Monday morning, Plaintiff called Fieger, who denied the work from home request. *Id.* Still, Plaintiff received approval to take paid time off through Tuesday. *Id.*

On Tuesday, March 17, Plaintiff's son started to exhibit an occasional cough, runny nose, and gastrointestinal issues. *Id.* at 94. Plaintiff informed her direct

---

[1] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

supervisor about her plans to return to the office on Thursday and about her lack of childcare. *Id.* Plaintiff was preassigned to work from home on Wednesday. *Id.*

During the day on Wednesday, the son's cough and runny nose persisted and his gastrointestinal issues worsened. *Id.* at 96. Yet, later in the day, Plaintiff told the firm's human resources head about her plans to return to the office the next day. *Id.* Also on Wednesday, President Trump signed the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020) into law. *Id.* at 95.

On Thursday morning, Plaintiff emailed the human resources head about her son's symptoms and her "major concerns" about returning to the office given her son's health. *Id.* at 96; *see, e.g.*, ECF 23-4, PgID 181; ECF 27-2, PgID 302. Plaintiff then offered to take unpaid leave to avoid going into the office. *Id.* The human resources head responded that Plaintiff could work from home for the rest of the week. ECF 14, PgID 97. But, hours later, at the close of business on Thursday, the human resources head emailed Plaintiff a termination letter signed by Fieger. *Id.*

## LEGAL STANDARD

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the

3

plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430.

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009). To resolve a Rule 12(b)(6) motion, the Court may rely on "exhibits attached [to the complaint] . . . and exhibits attached to [D]efendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to [the] claims." *Bassett*, 528 F.3d at 430.

## DISCUSSION

The Court will first address the FMLA claim and then the state law claims. After, the Court will address Defendants' request for sanctions.

I.  FMLA Claim

The FMLA entitles an eligible employee to medical leave to care for a child who has a "serious health condition." 29 U.S.C. § 2612(a)(1)(C). The law bans an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or attempt to exercise, any [FMLA] right." § 2615(a)(1). It also bans an employer from "discharg[ing] or in any other manner discriminat[ing] against an individual for opposing any practice" that the FMLA outlaws. § 2615(a)(2).

In the Sixth Circuit, plaintiffs have two "theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and

4

(2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006) (internal quotation omitted). The retaliation theory focuses on "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (internal quotations and quotation omitted).

Plaintiff explained that "[t]he gravamen of [her first claim] is in FMLA retaliation, alleging that she was terminated in retaliation for requesting or inquiring about FMLA leave." ECF 27, PgID 272 n.2. On that basis, Plaintiff asserted only a retaliation claim under § 2615(a)(2). *See Huffman v. Speedway LLC*, 621 F. App'x 792, 797 (6th Cir. 2015) ("[I]f the 'essence' of a plaintiff's FMLA claim falls under only one of the two theories, the district court does not err in confining its analysis to only that theory.") (quoting *Seeger*, 681 F.3d at 283).[2]

To establish a prima facie FMLA retaliation claim, Plaintiff must plausibly plead four elements. *Seeger*, 681 F.3d at 283 (citation omitted). First, "[s]he was engaged in a statutorily protected activity." *Id.* (citation omitted). Second, Defendants "knew that [s]he was exercising h[er] FMLA rights." *Id.* (citation omitted). Third, "[s]he suffered an adverse employment action." *Id.* (citation omitted). And fourth, "a causal connection [] between the protected FMLA activity and the adverse employment action." *Id.* (citation omitted).

---

[2] At the motion hearing, Plaintiff's counsel confirmed the FMLA claim arises only under a retaliation theory.

The Court's analysis begins and ends with the first element. To satisfy the first element, Plaintiff must show she was entitled to FMLA leave. *Nawrocki v. United Methodist Ret. Cmty's, Inc.*, 174 F. App'x 334, 339 (6th Cir. 2006). In other words, if Plaintiff cannot plead that she sought leave "on account of [her son's] serious health condition," then she cannot establish "that [s]he engaged in an activity protected by the FMLA." *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 338 (6th Cir. 2009). Indeed, the Sixth Circuit has noted "a threshold requirement under the FMLA" is whether a plaintiff has requested FMLA leave due to a "serious health condition." *Palmer v. Cacioppo*, 429 F. App'x 491, 496 (6th Cir. 2011).

But Plaintiff failed to argue whether she was entitled to FMLA leave. *See* ECF 27, PgID 273–79. Instead, Plaintiff claimed she could assert an FMLA retaliation claim *without* being "entitled to take leave." *Id.* at 273 (emphasis omitted). Based on Plaintiff's reading of the case law, she need only qualify as "an 'eligible employee' under the FMLA" to satisfy the first element of a retaliation claim. *Id.* at 275 (citation omitted).

Yet Plaintiff's reasoning contradicts binding Sixth Circuit precedent. Put simply, "[t]o prevail on either her interference claim or her retaliation claim, [a plaintiff] must prove that she was entitled to FMLA leave." *Branham v. Gannet Satellite Info. Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010). To repeat, Plaintiff "cannot prevail on her [] retaliation claim[] unless she sought leave for an FMLA-qualifying reason, namely, that [her son] had a 'serious health condition.'" *Id.* at 569.

6

To this point in the litigation, neither party has addressed *Branham*'s binding precedent. *See* ECF 27, PgID 273–79.[3] Rather, Plaintiff relied on *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) and *Edgar v. JAC Prod., Inc.*, 443 F.3d 501 (6th Cir. 2006). ECF 27, PgID 272–74.

Plaintiff claimed that *Skrjanc* allows a plaintiff to assert an FMLA retaliation claim if "she is discharged in retaliation for *intending* to take FMLA." ECF 27, PgID 274 (emphasis in original). But *Skrjanc*'s plain text fails to support that reading. The plaintiff in *Skrjanc* had a foot injury that qualified as a "serious health condition" and so "[t]he district court properly concluded that Skrjanc presented a prima facie case of retaliatory discharge." 272 F.3d at 314. The plaintiff therefore had a serious injury that created a right to FMLA leave.

Plaintiff also argued *Edgar* supported her reading of the case law. ECF 27 PgID 272–73. *Edgar*, like the Sixth Circuit opinions cited above (*Branham*, *Skrjanc*, *Nawrocki*, *Morris*, and *Palmer*), reviewed FMLA claims at the summary judgment stage. And *Edgar* merely listed the elements of a prima facie FMLA retaliation claim that were cited in *Skrjanc*. *Edgar*, 443 F.3d at 508 (citing *Skrjanc*, 272 F.3d at 314). Beyond that, the analysis from the Sixth Circuit in *Edgar* focused only on whether "an employer can lawfully fire an employee who is unable to return to work at the end of the FMLA leave period" or whether the plaintiff's serious health condition "prevented her from returning to work was 'exacerbated' by the firing." *Id.* at 509. At

---

[3] At the motion hearing, the Court brought *Branham* to counsel's attention. Neither counsel, however, addressed *Branham* at the hearing.

most, the Sixth Circuit's holding in *Edgar* stands for no more than its holding in *Skrjanc*: a plaintiff with a "serious health condition" presented a prima facie FMLA retaliation case. *Skrjanc*, 272 F.3d at 314.

At the motion hearing, Plaintiff's counsel suggested *Edgar* holds that the employer's motive is the crux of an FMLA retaliation claim. *See* 443 F.3d at 508 ("Under the retaliation theory . . ., the employer's motive is an integral part of the analysis.") (emphasis omitted). And the suggestion is true, but "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Id.* (emphasis in original). In other words, the employer's motive is relevant under the fourth prong of an FMLA retaliation claim: that "a causal connection existed between the protected FMLA activity and the adverse employment action." *Seeger*, 681 F.3d at 283; *see Morris*, 320 F. App'x at 338 ("The significant difference between an interference and a retaliation claim is the causal connection element, which encompasses an employer's intent."). All told, Sixth Circuit precedent does not harmonize Plaintiff's argument with the fact that she "cannot prevail on her [] retaliation claim[] unless she sought leave for an FMLA-qualifying reason." *Branham*, 619 F.3d at 569.

What is more, even apart from *Branham*, several recent, unpublished Sixth Circuit cases also undercut Plaintiff's reasoning. *E.g.*, *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 499 (6th Cir. 2014) (explaining that, at the motion to dismiss stage, a plaintiff not entitled to FMLA leave could not plausibly state an FMLA retaliation

8

claim against her employer); *Palmer*, 429 F. App'x at 496; *Morris*, 320 F. App'x at 338; *Nawrocki*, 174 F. App'x at 339. At bottom, the Sixth Circuit requires plaintiffs who assert FMLA retaliation claims to plead and prove they would have been entitled to FMLA leave. And the Court cannot ignore *Branham*'s plain text: "[t]o prevail on . . . her retaliation claim, [a plaintiff] must prove that she was entitled to FMLA leave." 619 F.3d at 568 (citing *Edgar*, 443 F.3d at 508).

Because FMLA entitlement is an element to an FMLA retaliation claim, Plaintiff "cannot prevail on her [] retaliation claim[] unless she sought leave for an FMLA-qualifying reason, namely, that [her son] had a 'serious health condition.'" *Id.* at 569; *see also Morris*, 320 F. App'x at 338 ("Because [Plaintiff's] leave was not on account of a serious health condition, [s]he cannot establish the first element, that [s]he engaged in an activity protected by the FMLA"). Plaintiff's complaint must therefore plausibly state an entitlement to FMLA leave.

And to be entitled to FMLA leave, Plaintiff must show that her son had a "serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA defines a "serious health condition" as "an illness . . . that involves" "inpatient care in a hospital" or "continuing treatment by a health care provider." *Id.* § 2611(11). Federal regulations exclude conditions like "the common cold, the flu, ear aches, [and] upset stomach" from qualifying as a "serious health condition." 29 C.F.R. § 825.113(d). Federal regulations also define what constitutes "continuing treatment by a health care provider." *Id.* § 825.115.

9

Here, Plaintiff alleged her son suffered from a cough, runny nose, and gastrointestinal issues. ECF 14, PgID 94, 96. Plaintiff did not allege her son went to the hospital. *See id.* She did not allege her son received treatment for his cold- and flu-like symptoms. *See id.* Granted, Plaintiff's son had contracted a respiratory infection that required a five-day stay in the hospital and use of a nebulizer. *Id.* at 92. But all the treatment for the infection occurred well *before* the events here and ongoing treatment for the past infection was not given as a reason why Plaintiff asked to take unpaid leave. *Id.* Even though the respiratory infection may have been a "serious health condition" in the past, no allegations hint that the infection was ongoing or still a serious health condition when Plaintiff sought leave from Defendants in March 2020. *See Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 354 (6th Cir. 2013) (Plaintiff must show that she "qualif[ied] for FMLA leave on or about the dates in question."). Rather, "Plaintiff worried that her son's previous bout with [the infection] left him particularly vulnerable to contracting COVID-19." *Id.* To be sure, Plaintiff never alleged her son's cough, runny nose, and gastrointestinal issues in March 2020 required "inpatient care in a hospital" or specific "continuing treatment by a health care provider." § 2611(11); *see* ECF 14, PgID 92, 94, 96. Without those crucial factors, the Court, even absent medical expertise, must find that Plaintiff's son did not plausibly suffer from a "serious health condition" as defined by the FMLA in March 2020.[4] § 2611(11); *see Lackey v. Jackson Cnty.*, 104 F. App'x 483,

---

[4] Tellingly, Plaintiff's response brief failed to address whether her son suffered from a "serious health condition" as defined by the FMLA. § 2611(11); *see* ECF 27, PgID 272–79.

10

490 (6th Cir. 2004) ("Not all medical problems are subject to the FMLA. It is Plaintiff's burden to establish that [her son's] medical problems are severe enough to warrant the FMLA protection."). After viewing the complaint in the light most favorable to Plaintiff, the complaint contains no allegations that would allow the Court to infer Plaintiff's son plausibly suffered from a "serious health condition" in March 2020.

Likewise, Plaintiff cannot plausibly establish a claim under the FFCRA. President Trump signed the FFCRA into law before Plaintiff's firing. ECF 14, PgID 95. The FFCRA created two acts: the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA").

EPSLA "requires covered employers to provide paid sick leave to employees" who must care "for a child . . . whose childcare provider is unavailable[] because of COVID-19." *New York v. United States Dep't of Labor*, 477 F. Supp. 3d 1, 5 (S.D.N.Y. 2020) (citing FFCRA § 5102(a)). And the EFMLEA amended the FMLA so that "employees who are unable to work because they must care for a dependent child due to COVID-19" may receive "paid leave." *Id.*

The provisions, however, did not go into effect until *after* Plaintiff's firing. *Paid Leave Under the FFCRA*, 85 Fed. Reg. 19326-01, at 19327 (Apr. 6, 2020) (to be codified at 29 C.F.R. pt. 826) ("These new paid sick leave and expanded family and medical leave requirements became operational on April 1, 2020, effective on April 2, 2020."). And the FFCRA is not retroactive. *Id.* at 19341; *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect

11

unless their language requires this result."). As a result, the FFCRA provides no relief for Plaintiff under the FMLA. Put differently, Congress and the President enacted a law to protect working parents from COVID-19's consequences, but the law's protections came into effect too late for Plaintiff to avail herself of them.

In sum, Plaintiff failed to plausibly plead entitlement to FMLA leave and thus failed to plead an FMLA retaliation claim. The Court will grant the motion to dismiss the FMLA claim.

II. State Law Claims

The Court has exercised supplemental jurisdiction over the three state law claims. ECF 14, PgID 89, 102–06. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c). Generally, district courts should decline to exercise supplemental jurisdiction over state law claims when all federal law claims have been dismissed from the case before trial. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.").

The Court will therefore decline to exercise supplemental jurisdiction over the remaining state law claims. For one, the Court lacks original jurisdiction over the claims. And two, the interests of judicial economy do not override the presumption against retaining the case because the parties have not even begun discovery. ECF 33; *see Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). For those two

reasons, the Court will dismiss the state law claims without prejudice. Because the Court is declining to resolve the state law claims on the merits, the Court will deny the motion to dismiss the state law claims.

III. Defendants' Request for Sanctions

Last, under Federal Rule of Civil Procedure 11(b)(1), when an attorney signs a pleading, the attorney is certifying to the Court the pleading is "not being presented for any improper purpose, such as to harass." When the Court determines a party has violated Rule 11(b), it "*may* impose an appropriate sanction" on the party. Fed. R. Civ. P. 11(c)(1) (emphasis added). But when a party moves for Rule 11 sanctions, the rule itself sets out three steps the moving party must follow.

First, "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Second, that motion "must describe the specific conduct that allegedly violates Rule 11(b)." *Id.* And third, the party must follow the so-called safe-harbor requirement. *Id.* The safe-harbor provision requires a party to formally serve the sanctions motion on the opposing party and then wait twenty-one days to file the motion with the Court. *Id.* "Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) (citations omitted).

Defendants did not follow Rule 11(c)'s steps. Defendants filed no detached request for sanctions. ECF 23; ECF 32, PgID 328, n.1. And Defendants offered no evidence they adhered to the safe-harbor provision. *Id.*; *see also* Fed. R. Civ. P.

13

11(c)(2). Because Defendants failed to follow the proper procedures, the Court will deny the sanctions request.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion to dismiss [23] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the FMLA claim against Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the state law claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' request for sanctions is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

                        s/ Stephen J. Murphy, III
                        STEPHEN J. MURPHY, III
                        United States District Judge

Dated: June 4, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 4, 2021, by electronic and/or ordinary mail.

                        s/ David P. Parker
                        Case Manager